IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| DANIEL HODGES, | * | |
| Plaintiff, | * | |
| v. | * | Civil No.: SAG-15-3537 |
| MAYOR & CITY COUNCIL OF ANNAPOLIS, *et al.*, | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION**

Plaintiff Daniel Hodges sued the Mayor and City Council of Annapolis, Maryland, Annapolis Police Department Chief Michael Pristoop, various known and unknown officers of the Annapolis Police Department ("APD"), unknown officers of the Anne Arundel County Police Department ("AACPD"), the Anne Arundel County Council, and Anne Arundel County Police Department Chief Timothy Altomare. Mr. Hodges asserts that the defendants violated his rights under the First, Fourth, Fifth, and Sixth Amendments of the United States Constitution, as enforced under the Civil Rights Act, 42 U.S.C. § 1983; and Articles 22, 24, and 26 of the Maryland Declaration of Rights; and also violated the Fair Housing Act, 42 U.S.C. § 3601, *et seq*.[1] [ECF No. 28]. The Anne Arundel County Council and Chief Altomare have jointly moved to dismiss Mr. Hodges's Amended Complaint against them. I have reviewed the record, and find

---

[1] In his initial Complaint, Mr. Hodges named only the Mayor and City Council of Annapolis, Chief Pristoop, and various known and unknown officers of the APD as defendants. By consent motion granted on April 20, 2016, Mr. Hodges amended his Complaint to include the first names of the known officers of the APD, and to add as defendants unknown officers of the AACPD, the Anne Arundel County Council, and Chief Altomare. *See* [ECF Nos. 27 and 28].

that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2016). For the reasons stated herein, the motion to dismiss is GRANTED.

## I.    BACKGROUND

According to the Amended Complaint, Mr. Hodges, a white, thirty-five year old man, resides in an apartment complex located in a neighborhood of Annapolis, Maryland where the vast majority of residents are African-American or Latino. Am. Compl. at ¶¶ 3, 4. On April 6, 2015, Mr. Hodges was driving in Annapolis when he was stopped by Officer Andrew Ascione of the APD. *Id*. at ¶ 10. After questioning Mr. Hodges about drug activity, Officer Ascione asked Mr. Hodges to step out of his vehicle. *Id*. at ¶¶ 11-12. Officer Ascione frisked Mr. Hodges for weapons, and "squeeze[ed] his pockets for contraband." *Id*. at ¶ 12. Mr. Hodges then consented to a search of his vehicle. *Id*. at ¶ 13. After an APD supervisor arrived on the scene and spoke with Officer Ascione, the supervisor questioned Mr. Hodges about his having been "near the Harbour House community," a public housing area in Annapolis. *Id.* at ¶ 14. Mr. Hodges alleges, however, that he was not near the Harbour House, and that it was thus clear to him that "there was confusion among the officers about the reason for the detention and search," and that "the supervisor considered a motorist having been near the Harbour House to be [the] grounds for" the officer's suspicion and the traffic stop. *Id.* Officer Ascione cited Mr. Hodges for driving with a suspended registration. *Id*. at ¶ 15.

At or around midnight on April 20, 2015, Officer Alfred Thomas of the APD pulled Mr. Hodges over while Mr. Hodges was driving in Annapolis, and alleged that he had failed to stop for a stop sign. *Id*. at ¶¶ 16-18. Mr. Hodges believes, however, that he "did stop for the stop sign." *Id*. at ¶ 17. Mr. Hodges claims that Officer Thomas stopped him only "to explore why [he] was in th[at] neighborhood at that hour" because the neighborhood in which he was stopped is "mostly populated by racial minorities," and because April 20 is "well known among cannabis

users as a day to use that drug." Officer Thomas issued a citation to Mr. Hodges for failure to stop at a stop sign. *Id*. at ¶¶ 18, 20.

On August 27, 2015, shortly after leaving his apartment complex, Officer Gregory Fabela of the APD pulled Mr. Hodges over in front of 1703 Bay Ridge Avenue in Annapolis for failing to stop at a stop sign. *Id*. at ¶¶ 21-22. Mr. Hodges alleges that Officer Fabela started following him as he left the apartment complex. *Id*. at ¶ 23. Officer Fabela questioned Mr. Hodges about drug activity and informed him of the need to search his vehicle. *Id*. On this occasion, Mr. Hodges refused the search, which prompted additional APD officers to arrive on the scene. *Id*. at ¶ 24. At approximately the same time as the additional APD officers arrived, Nevin L. Young, Esq., Mr. Hodges's counsel, who resides at 1703 Bay Ridge Avenue, arrived as well, and began video recording the encounter on his cellphone. *Id.* at ¶¶ 25, 26.

The APD officers then called the AACPD to request a K-9 search unit. *Id*. at ¶ 27. Before the K-9 unit arrived, Mr. Hodges alleges that the APD officers forced him to exit his vehicle, frisked him for weapons, and forced him to sit on the curb at a distance from his vehicle. *Id*. at ¶ 29. An AACPD K-9 Unit arrived, and a dog performed a search of the vehicle. *Id*. at ¶¶ 30-31. Mr. Hodges alleges that during the search, "without the dog appearing to the make any affirmative cues," the K-9 handler led the dog to the driver's door and guided the dog inside the vehicle. *Id*. at ¶ 31. Based on the dog's behavior inside the vehicle, the K-9 handler advised the APD officers that they should search the front seat of the vehicle. *Id*. at ¶ 32. The APD Officers proceeded to search the entire interior of the vehicle, which did not yield discovery of any contraband. *Id*.

Mr. Hodges believes that the APD and/or individual officers employed by the APD "have an investigative practice, policy, procedure, or custom" of stopping white motorists observed

leaving minority neighborhoods. *Id*. at ¶ 34. He contends that after the video of the third search, recorded by his counsel, was made public "in a limited local neighborhood forum on the [I]nternet," his counsel was contacted by additional motorists, all of whom were white, who were detained in minority neighborhoods and whose vehicles had been searched by the APD. *Id*. at ¶ 33. Counsel for Mr. Hodges sent a letter to the APD attempting to obtain video recordings of the first two traffic stops on April 6, 2015 and April 20, 2015. *Id*. at ¶ 35. The APD informed him that they could not provide the recordings because APD video recordings are only retained for twenty-eight days after the date of the incident. *Id*.

## II. STANDARD OF REVIEW

The Anne Arundel County Council and Chief Altomare have moved to dismiss the Amended Complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). A Rule 12(b)(6) motion "test[s] the sufficiency of a complaint" and does not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 4th Cir. 1999)). When ruling on such a motion, the court must "accept the well-pled allegations of the complaint as true" and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997).

To survive a motion to dismiss, the factual allegations in a complaint "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). It is not sufficient that the facts suggest "the mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Rather, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," such that the court could

"draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citations and internal quotation marks omitted). A complaint need not provide "detailed factual allegations," but it must "provide the grounds of [the plaintiff's] entitlement to relief" with "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (citations and internal quotation marks omitted).

**III. DISCUSSION**

    **A. The Anne Arundel County Council is Not an Entity *Sui Juris* and Must be Dismissed.**

The Anne Arundel County Council ("County Council") is not an entity *sui juris*, and therefore cannot be sued. Rather, the proper party to be sued is "Anne Arundel County, Maryland." *See* Anne Arundel County Charter § 103 (2005) ("The corporate name [of the county] shall be 'Anne Arundel County, Maryland,' and it shall thus be designated in all actions and proceedings touching its rights, powers, properties, liabilities, and duties."); *see also, e.g.*, *Strebeck v. Baltimore Cty. Police Dep't*, No. JFM-05-2580, 2005 WL 2897932, at *1 (D. Md. Oct. 17, 2005) (noting that a county council is not *sui juris* because it is a county's "legislative branch of government"). Dismissal of the County Council on this basis alone is warranted. *See Revene v. Charles Cty. Comm'rs*, 882 F.3d 870, 874 (4th Cir. 1989) ("The separate claim against the 'Office of the Sheriff' was rightly dismissed on the basis that this 'office' is not a cognizable legal entity."); *Corbin v. Woolums*, No. 3-08-173, 2008 WL 2149911, at *4 (E.D. Va. May 20, 2008) ("An entity is not *sui juris* if it is an agency of the municipality and not a separate legal entity. [Plaintiffs] concede that the [town police department] is not *sui juris*. . . . As such, the motion to dismiss against the [non-*sui juris* defendant] is granted.").

While he requested leave to further amend his first Amended Complaint in his opposition to the instant motion, Mr. Hodges has neither acknowledged, as a basis for his request, that he

must correct the County Council's name, nor filed a separate motion seeking the same. Notably, even absent an explicit request, the granting of leave to amend is generally favored in this context and for this purpose. *See Arbaugh v. Bd. of Educ.*, 329 F. Supp. 2d 762, 767 n. 4 (N.D. W. Va. 2004) ("The Fourth Circuit's generosity in construing civil rights complaints also weighs in favor of granting leave to amend."); *Widener v. City of Bristol, Va.*, No. 1:13CV00053, 2013 WL 6001121, at *3 (W.D. Va. Nov. 12, 2013) (granting leave to amend complaint to name proper *sui juris* parties); *Kundrat v. D.C.*, 106 F. Supp. 2d 1, 8 (D.D.C. 2000). Where amendment would be futile, however, courts have discretion to deny such leave to amend and to dismiss a plaintiff's claim. *Foman v. Davis*, 371 U.S. 178, 182 (1962). As will be explained in greater detail below, dismissing Mr. Hodges's claims against the County Council without prejudice and permitting him to refile an Amended Complaint naming "Anne Arundel County, Maryland" ("the County") as a defendant would be futile because he cannot plead sufficient facts to show that the County is liable for the violations he alleges occurred.

**B. Mr. Hodges's Constitutional Claims**

In Count I of his Amended Complaint, Mr. Hodges alleges a violation of his constitutional rights against all Defendants under the First, Fourth, Fifth, and Sixth Amendments to the United States Constitution, made applicable to the states by the Fourteenth Amendment, and as enforced by 42 U.S.C. § 1983. Am. Compl. at 9-10. Specifically, Mr. Hodges contends that all Defendants violated his rights by "furthering a policy, practice, procedure, or custom" both of illegally stopping and detaining motorists based on race, and of destroying video records of traffic stops twenty-eight days after those traffic stops occur. *Id.* at ¶¶ 38, 39. He also contends that the K-9 search of his vehicle was unconstitutionally prolonged pursuant to a "policy, practice, procedure, or custom," that all Defendants unconstitutionally detained him for

"an unreasonably long time" while conducting the illegal K-9 search, and that the physical search of his entire vehicle resulting from the illegal K-9 search was consequently unconstitutional. *Id.* at ¶¶ 40-40c, 42, 43.

In Count II, Mr. Hodges alleges that all Defendants violated his rights under Articles 22, 24, and 26 of Maryland's Declaration of Rights. Articles 24 and 26 are the state constitutional counterparts to the Fourteenth and Fourth Amendments, respectively, and both provisions are ordinarily interpreted *in pari materia* with their federal analogs. *See Littleton v. Swonger*, 502 F. App'x 271, 274 (4th Cir. 2012). Therefore, aside from Article 22, which will be addressed independently, the alleged violations of the Maryland Declaration of Rights will be analyzed together with their federal constitutional counterparts. Neither the County nor Chief Altomare is an appropriate defendant for any of these constitutional claims.

**1. Mr. Hodges's Fourth Amendment Claim**

Mr. Hodges fails to plead sufficient facts to establish liability against the County or Chief Altomare for violating his rights under the Fourth Amendment. In *Monell v. Department of Social Services of the City of New York*, the Supreme Court held that "[l]ocal governing bodies" can be sued "directly under § 1983 for monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." 436 U.S. 658, 690 (1978). Further, local governments "may be sued for constitutional deprivations visited pursuant to governmental custom" if such practices "could well be so permanent and well settled as to constitute a custom or usage with the force of law." *Id*. at 690-91 (internal quotation marks omitted). The Court held that local governments cannot "be held liable unless action pursuant to *official municipal policy* of some nature caused a constitutional

tort." *Id.* (emphasis added). In particular, the Court concluded that a local government "cannot be held liable solely because it employs a tortfeasor," thereby protecting local governments from liability "under § 1983 on a *respondeat superior* theory." *Id*; *see also Polk Cty. v. Dodson*, 454 U.S. 312, 325 (1981) ("Section 1983 will not support a claim [against the county] based on a *respondeat superior* theory of liability."); *Avery v. Burke Cty.*, 660 F.2d 111, 114 (4th Cir. 1981) (holding that the county may not be liable under § 1983 based on a *respondeat superior* theory).

Against the standard promulgated in *Monell*, Mr. Hodges has not pled facts showing that the County is liable for violating the Fourth Amendment's proscription against unreasonable searches and seizures during the AACPD K-9 search of his vehicle. Accepting the facts alleged as true, an AACPD K-9 handler encouraged a trained dog to jump onto the front seat of Mr. Hodges's vehicle after the APD called the K-9 unit to the scene of Mr. Hodges's traffic stop in August, 2015. Am. Compl. ¶ 34. Based on the dog's behavior within the vehicle, the AACPD K-9 officer advised the APD officers to search the vehicle. Courts have indeed held that encouraging a dog to enter the place to be searched without an affirmative alert violates the Fourth Amendment. *See, e.g.*, *United States v. Watson*, 783 F. Supp. 258, 265 (E.D. Va. 1992) (finding that a Fourth Amendment violation may occur if "the police handler encourage[d] the dog to jump in[side the vehicle]") (citations omitted). Thus, had any incriminating evidence been found, the evidence obtained in the physical search of Mr. Hodges's vehicle would potentially have been inadmissible in court. *See Mapp v. Ohio*, 367 U.S. 643, 655 (1961).

However, Mr. Hodges fails to plead specific facts connecting the K-9 search, a singular incident, to an "official municipal policy of some nature." *Monell*, 436 U.S. at 690. Absent from his Amended Complaint is any allegation that the AACPD officer carried out the

purportedly unconstitutional K-9 search pursuant to AACPD policy, or that such an unconstitutional policy exists. Even if Mr. Hodges's claim that the K-9 search was "illegal and unnecessary" could be construed as a claim that the AACPD's policy regarding K-9 units facilitates unconstitutional searches and is thus itself unconstitutional, Mr. Hodges has not pled facts to support this allegation. Moreover, the allegedly illegal actions of the APD officers prior to the K-9 unit's arrival are not attributable to the AACPD. AACPD officers did not participate in the initial stop of Mr. Hodges's vehicle. Only the APD officers questioned him about drug activity, ordered the K-9 search of his vehicle, removed him from his vehicle, frisked him for weapons, and detained him before the K-9 unit arrived on the scene and during the search. APD officers present at the scene made the initial assessment of whether reasonable suspicion existed to prolong the traffic stop in order to conduct a K-9 search of the vehicle. The APD, as the party required to have had reasonable suspicion for the stop, is the only relevant party responsible for any alleged constitutional violations prior to the K-9 search of the vehicle, including the prolongation of the stop while waiting for the K-9 unit to respond. *See United States v. Guijon-Ortiz*, 660 F.3d 757, 764 (4th Cir. 2011) ("To prolong a traffic stop beyond the scope of a routine traffic stop, an officer must possess a justification for doing so other than the initial traffic violation that prompted the stop in the first place.") (citations and internal quotation marks omitted).

Mr. Hodges's claim that the County is liable under the doctrine of *respondeat superior* is similarly unavailing. In his opposition to the instant motion, Mr. Hodges asserts that the County and Chief Altomare have "failed to address [his] allegations that an [AACPD] officer, under the supervision and direction of . . . Chief Timothy Altomare, conducted an illegal K-9 search of [his] vehicle." Pl.'s Opp. at 2. He argues that "the determination of whether . . . a person

involved in the . . . policy-making process is liable for the acts of their subordinates is a fact-based determination and not one of law," and that he should therefore be permitted to conduct discovery on the County and Chief Altomare. *Id.* at 2-3 (citing *Avery v. Burke Cty.*, 660 F.2d at 114). This argument is undermined entirely by *Monell*'s holding that local governments cannot be held liable "under § 1983 on a *respondeat superior* theory . . . solely because [they] employ a tortfeasor." 436 U.S. at 690-91. As a matter of law, because Mr. Hodges cannot plead facts to show that the County is liable for the actions of the AACPD's K-9 unit, he "fails to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678.

The Amended Complaint is similarly devoid of facts to support Fourth Amendment liability against Chief Altomare in his official capacity. Under Fourth Circuit precedent, "supervisory officials may be held liable in certain circumstances for the constitutional injuries inflicted by their subordinates." *See Slakan v. Porter*, 737 F.2d 368, 373 (4th Cir. 1984), *cert. denied*, 470 U.S. 1035 (1985). The *Slakan* Court reasoned that liability is "not premised upon *respondeat superior* but on a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care." *Id.* at 372-73 (citations omitted). In order to establish supervisory liability, Mr. Hodges must plead facts that demonstrate:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show 'deliberate indifference to or tacit authorization of the alleged offensive practices;' and (3) that there was an 'affirmative causal link' between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (citing *Miltier v. Beorn*, 896 F.2d 848, 854 (4th Cir. 1990)). "Establishing a pervasive and unreasonable risk of harm requires evidence that the

conduct is widespread, or at least has been used on several different occasions[,] and that the conduct engaged in by the subordinate poses an unreasonable risk of harm of constitutional injury." *Shaw*, 13 F.3d at 799 (quoting *Slakan*, 737 F.2d at 373-74).  A plaintiff may establish that a supervisor's response to the knowledge of the conduct in the first prong was so inadequate as to show deliberate indifference by demonstrating a supervisor's "continued inaction in the face of documented widespread abuses." *Id.* at 799 (citations and internal quotations marks omitted).  However, a plaintiff "cannot satisfy his burden of proof by pointing to a single incident or isolated incidents, for a supervisor cannot be expected to promulgate rules and procedures covering every conceivable occurrence within the area of his responsibilities." *Id.*

The AACPD's involvement in the alleged events consisted only of performing a K-9 search at the site of the August, 2015 APD traffic stop.  Am. Compl. ¶¶ 27, 30-32.  Regardless of whether the K-9 handler unlawfully encouraged the dog to jump onto the front seat of Mr. Hodges's car, as Mr. Hodges contends, this claim regarding the AACPD K-9 officer's conduct on that one occasion falls short of alleging that "the conduct is widespread, or at least has been used on several different occasions." *Shaw*, 13 F.3d at 799.  Additionally, Mr. Hodges fails to plead specific facts detailing Chief Altomare's "continued inaction in the face of documented widespread abuses." *Id.*  Mr. Hodges cannot satisfy his burden of proof by "pointing to this one single incident." *Id.*  Finally, the Amended Complaint fails to plead specific facts establishing the existence of an "affirmative causal link" between Chief Altomare's inaction and the alleged constitutional injury suffered.  *Id.*  Thus, Mr. Hodges fails to plead facts sufficient to establish Chief Altomare's liability in his official capacity for violating his rights under the Fourth Amendment.

**2. Mr. Hodges's First, Fifth, and Sixth Amendment Claims**

Mr. Hodges fails to plead specific facts establishing the County and Chief Altomare's liability for violating his rights under the First, Fifth, and Sixth Amendments, as alleged in Count I of his Amended Complaint. The First Amendment provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." U.S. Const. amend. I. Facts explaining how the AACPD's K-9 search violated Mr. Hodges's First Amendment rights are absent from the Amended Complaint. Furthermore, if Mr. Hodges is attempting to claim that the APD's policy of destroying traffic video recordings after twenty-eight days is a violation of his First Amendment rights, the APD's policy is not applicable or attributable to the County or Chief Altomare.

Mr. Hodges's claim that the County and Chief Altomare violated his Fifth Amendment right to due process is similarly without merit. The Fifth Amendment provides, in relevant part, that "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. Mr. Hodges alleges that his rights to due process, as outlined in *Brady v. Maryland*, 373 U.S. 83 (1963), were violated with the "policy, practice, procedure or custom of destroying video records of traffic stops 28 days after those traffic stops occur." Am. Compl. ¶ 39. *Brady* held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. 83, 87 (1963). In the instant case, however, Mr. Hodges specifically names the APD as the party responsible for destroying the video recordings of traffic stops. *Id*. at ¶ 35. If any *Brady* violation occurred, Mr.

Hodges fails to plead specific facts that explain how the County or Chief Altomare is a relevant party to, or perpetrator of, this claim. Therefore, Mr. Hodges fails to establish either defendant's liability for violating his due process rights under *Brady*.

Mr. Hodges also fails to allege facts supporting the County and Chief Altomare's liability for violating his Sixth Amendment rights. The Sixth Amendment states that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial . . . and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. In light of the fact that Mr. Hodges is not facing criminal prosecution, the alleged Sixth Amendment violation is immaterial to the facts pled in the Amended Complaint. For this same reason, Mr. Hodges's claim that the County violated his rights under Article 22 of the Maryland Declaration of Rights, which states that "no man ought to be compelled to give evidence against himself in a criminal case," is not cognizable. Md. Const. Decl. of Rts. Art. 22. Since Articles 24 and 26 of the Maryland Declaration of Rights are *in pari materia* with their respective federal constitutional counterparts of the Fourteenth and Fourth Amendments, the former of which applies the Fifth Amendment's due process clause to the states, the above analysis regarding these constitutional claims applies to Mr. Hodges's claims in Count II of his Amended Complaint that the County and Chief Altomare violated his rights under Articles 24 and 26 as well.

Finally, it must be noted that although Mr. Hodges brings suit against Chief Altomare for the alleged constitutional violations individually, as well as in his official capacity, Mr. Hodges has also failed to state a claim for personal liability against Chief Altomare. Personal capacity suits under 42 U.S.C. § 1983 seek to "impose personal liability upon a government

official for actions he takes under color of state law." *Kentucky v. Graham,* 473 U.S. 159, 165 (1985). In order to establish personal liability in a § 1983 action, "it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right." *Id.* at 166. However, as indicated above, Mr. Hodges fails to plead specific facts that show how Chief Altomare's actions, under the color of a state law, caused a "deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. All of the claims in Counts I and II are therefore dismissed as against these Defendants.

### C. Mr. Hodges's Fair Housing Act Claims

In Count III of his Amended Complaint, Mr. Hodges alleges that all Defendants interfered with the exercise and enjoyment of his right to fair housing in violation of section 3617 of the Fair Housing Act ("FHA"). Am. Compl. at 14. Section 3617 of the FHA makes it "unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by section 3603, 3604, 3605, or 3606 of [the FHA]." 42 U.S.C. § 3617. Mr. Hodges does not specify which of these four enumerated sections the Defendants violated. Instead, he states only that the Defendants' actions "result[ed] in coercion, intimidation, or harassment of the Plaintiff and other persons who choose to live in minority communities despite being of a different race, through illegally profiling, detaining, seizing and searching those persons and their property." Am. Compl. ¶ 55. As noted above, the AACPD's involvement in the alleged events was limited to performing a K-9 search at the site of an APD traffic stop. The AACPD officers did not participate in any of the alleged police conduct prior to their arrival on the scene, including the decision to pull over Mr. Hodges or to prolong his traffic stop. Nowhere in the

Amended Complaint does Mr. Hodges allege that the County and Chief Altomare were aware of where Mr. Hodges lived, or of the racial makeup of his neighborhood or apartment complex. In the absence of these facts, all of Mr. Hodges's claims in Count III must be dismissed as against the County and Chief Altomare.

**IV. REQUEST FOR FURTHER LEAVE TO AMEND THE AMENDED COMPLAINT**

Mr. Hodges asserts in his opposition to the pending motion that he should be granted leave to further amend his first Amended Complaint.[2] While leave to amend is to be "freely given when justice so requires," *see* Fed. R. Civ. P. 15(a), the above analysis demonstrates the futility of permitting further amendment. All of the facts alleged fail to state a plausible claim against the County and Chief Altomare, and, given that he has alleged no facts that show even the possibility that he could meet his burden, allowing Mr. Hodges further amendment to establish a case against these Defendants would be pointless. Most of Mr. Hodges's claims have improperly identified the County and Chief Altomare as relevant parties, and the only fact-based claim against them, the alleged illegal AACPD K-9 search of his vehicle, falls far short of the standard necessary to establish facts that could show liability. It is evident that an additional amendment to the first Amended Complaint would not cure the fatal problems with Mr. Hodges's allegations against these two Defendants. *See Sisk v. Branch*, No. 3:11-CV-11, 2011 WL 1698772, at *3 (W.D. Va. May 4, 2011) (finding dismissal appropriate due to futility of claims when the plaintiff failed to "articulate[] any additional available facts that could plausibly inculpate the [Defendants]"). Therefore, Mr. Hodges's request for leave to further amend his first Amended Complaint to restate claims against the County and Chief Altomare is denied.

---

[2] Mr. Hodges has not filed a separate motion for leave to further amend his first Amended Complaint under Federal Rule of Civil Procedure 15(a).

## V. CONCLUSION

For the foregoing reasons, the Anne Arundel County Council and Chief Altomare's motion to dismiss is GRANTED. A separate Order follows.

Dated: August 3, 2016                                             /s/
                                                                            Stephanie A. Gallagher
                                                                            United States Magistrate Judge